### SINKEY et ux. v. TEMPLE LUMBER CO. et al.

### No. 10492.

Court of Civil Appeals of Texas. San Antonio.

Aug. 2, 1939.

Rehearing Denied Sept. 27, 1939.

Milton J. Baird, of Edinburg, for appellants.

Strickland, Ewers & Wilkens and R. D. Cox, Jr., all of Mission, H. Schaleben, of Edinburg, and Eckford & McMahon, of Dallas, for appellees.

SLATTON, Justice.

S. R. Sinkey and wife, Martha A. Sinkey, filed suit in the 14th District Court of Dallas County on the 24th day of March, 1930, against the Temple Lumber Company and H. L. McCloskey. The suit was to recover damages in the sum of $380,000 on account of the loss of land by foreclosure caused by the unlawful acts of agents of said Lumber Company. The execution of a contract of sale and exchange of properties was alleged between the Sinkeys and Ray Grady, dated on the 29th day of February, 1928. The Sinkeys were the owners of 1,400 acres of land in Hidalgo County, known as the Brown tract, upon which there was an outstanding mortgage of $34,000, six thousand dollars of

which was then due. This property was to be conveyed to Grady. The property of Grady to be conveyed to the Sinkeys was three buildings located on the corner of Maple and Alice Streets, known as Ricardo, Cherrywood, and Lindenwood, the three units consisting of thirty-nine apartments furnished, in the City of Dallas, Dallas County, Texas. The Sinkeys were to assume a mortgage upon the property in the sum of $120,000.

A contract of settlement between the Sinkeys and Grady, wherein the Sinkeys accepted the sum of $2,000 from Grady in settlement and cancellation of the contract of sale and exchange between said parties was attacked on account of fraud.

On the 21st day of March, 1931, the pleadings were amended in said suit, in which only the Temple Lumber Company was named as defendant, and in addition to the contracts above mentioned they pleaded a contract of sale and exchange between S. R. Sinkey and F. S. Hofues. The land above mentioned was to be conveyed to Hofues provided he could make arrangements with the owner and holder of the mortgage debt to have it extended or renewed, $18,000 of which was then past due; and Hofues was to convey to Sinkey, apartments located on the corner of Fairmount and Rosedale Streets, in the City of Fort Worth, with an outstanding indebtedness of $55,000, and $10,000 due, secured by a chattel mortgage upon the furnishings in said apartments. Hofues was to deliver a conveyance to the Sinkeys free and clear of incumbrance 100 acres of land, being a part of the land owned by the Sinkeys.

Another contract between Sinkey and Hofues, dated the 11th day of January, 1929, was pleaded, wherein it was agreed between the parties, in lieu of Hofues delivering a deed to the apartments Sinkey was to accept a deed to the 100 acres of land and release any claim or claims whatsoever against the balance of said land, and Hofues agreed to employ Sinkey for a period of two years at a salary of $100 per month. It was alleged that such contract was procured by fraud and that said parties did not discover the fraud until June 1, 1929.

On the 17th day of March, 1932, the Sinkeys filed their third amended original petition, which was a trespass to try title suit, seeking recovery of the land situated in Hidalgo County. The case was ordered transferred to Hidalgo County in October 1932, and was removed in August, 1937.

On the 22d day of April, 1937, the Temple Lumber Company, in cause No. B-10992, in the 93rd District Court of Hidalgo County, filed suit in trespass to try title to recover the Sinkey land against the Sinkeys and others to whom the Sinkeys had conveyed. The suits were consolidated September 18, 1937.

The Sinkeys filed, on the 18th day of September, 1937, a first amended original answer to the suit of the Temple Lumber Company, which consisted of a plea of not guilty and the transactions above mentioned. To this pleading the Temple Lumber Company answered by general denial and demurrer and twelve special exceptions. On the 18th day of October, 1937, the trial court overruled the general demurrer and sustained the special exceptions. The Sinkeys asked leave to amend, which was granted, and on the 30th day of October, 1937, filed a second amended original answer. On November 4, 1937, the Lumber Company filed a motion to strike said answer, because it did not cure the defects of the former pleading. On the 9th day of November, 1937, the court sustained the motion to strike.

On the 8th day of March, 1938, the Sinkeys filed a third amended original answer, which consisted of a repleading of the transactions above mentioned, and in addition that the deed from the Sinkeys to Hofues was not signed by the Sinkeys, which was sworn to by Sinkey.

The Temple Lumber Company replied to this pleading by general denial and general and special demurrers. No action was invoked upon the demurrers.

The value of the land in suit was alleged to be not in excess of $36,000. It is alleged that the Temple Lumber Company was organized for the purpose of manufacturing and selling lumber and that the Grady transaction would be ultra vires, but denied that said Grady transaction was the act of the corporation. It denied that Sinkey and wife were indebted to it at the time of the Hofues transaction, and stated that it had no interest in the property involved in the Ray Grady transaction, except a second lien upon the Grady property.

A power of attorney from the corporation to I. B. McFarland of Harris County, was alleged and charged to be of record in Dallas and Hidalgo Counties.

The Lumber Company specifically denied that the Grady and Hofues transactions were the acts and deeds of the corporation or that such transactions had ever been ratified or adopted by it. It specifically denied that parties claimed by Sinkeys to be the agents of said corporation were ever its agents.

The Temple Lumber Company pleaded the settlement agreement of the Grady transaction and alleged that the Sinkeys received the $2,000 and retained the same and claimed an estoppel against the Sinkeys to attempt to avoid said settlement agreement.

It alleged that under the contract between Sinkey and Hofues, dated May 23, 1928, said parties negotiated with Browne Land and Cattle Company for an extension of the $18,000 lien debt, which was then due, while said company had declared all of the lien indebtedness due and had placed the same in the hands of attorneys for collection, and the land was about to be sold under foreclosure. That the company had refused to extend the indebtedness for Sinkey and the Land Company required of Hofues the making of new notes, which was done after the conveyance of the land by the Sinkeys to Hofues; that the transaction had the legal effect to relieve Sinkey of liability on the land indebtedness. That upon completion of the extension of the indebtedness due upon the land it became necessary for Hofues to pay about $6,000, and at that time he approached the Lumber Company to obtain such funds, and in order to obtain the money the land was conveyed to C. O. Bellinger to secure the loan. That Hofues procured a conveyance of the 100 acres from the Sinkeys to him. That Hofues complied with his part of the agreement dated May 23, 1928, but that the Sinkeys failed and refused to carry out their part of the agreement after they were released from liability upon the land indebtedness, and thereafter the said parties made the agreement dated January 11, 1929. It was alleged that the agreement dated January 11, 1929, was made in October, 1928, and that Hofues paid to the Sinkeys the money as required, and deeded to them the land which they have since retained. That thereafter Hofues and the Temple Lumber Company agreed that a conveyance of the land to the Temple Lumber Company, with other property, would be made in full satisfaction of the indebtedness of Hofues to it.

It further alleged that in the Dallas County suit the Sinkeys charged that the claimed fraud and deceit came to their notice about the 1st day of June, 1929, and that said parties, with full knowledge of the claimed fraud and deceit the Sinkeys took and received $100 per month provided in the settlement agreement between them and Hofues up and until November, 1930, when the same was fully paid. Such acts were claimed to be an estoppel against them and that filing a suit for damages was an election of remedies.

It alleged that some six thousand dollars was furnished to Hofues, and in consideration of such money it accepted a conveyance of the property, without any knowledge of the alleged fraud and deceit, and thereby became an innocent purchaser of the property.

The trial court, at the request of Temple Lumber Company, directed the jury to return a verdict against the Sinkeys and in favor of Temple Lumber Company, and upon such verdict judgment was rendered in favor of Temple Lumber Company for the land and against the Sinkeys for damages. Hence this appeal.

The appellants claim error in the action of the court in directing a verdict against them for the land. It is claimed a question of fact was presented for the determination of the jury in that appellants denied signing the deed to the land in suit. The appellees, in addition to the deed above mentioned from Sinkey to Hofues, offered in evidence an agreement of the parties that the Browne Land & Cattle Company was the common source of title, a warranty deed retaining a vendor's lien from the Browne Land & Cattle Company to S. R. Sinkey, dated December 1, 1925, a deed of trust from S. R. Sinkey to A. A. Brown, Jr., as trustee for the benefit of said Land & Cattle Company, dated December 1, 1925. Such instrument recited that it secured the payment of twelve notes executed by Sinkey to the Land & Cattle Company aggregating $4000.00. A contract of sale and exchange of property, including the land in suit, between S. R. Sinkey and F. S. Hofues, dated May 23, 1928, a renewal and extension agreement between Browne Land & Cattle Company, et al., and F. S. Hofues, dated June 1, 1928. Such instrument recites the deed and deed of trust aforesaid and that Sinkey and wife had conveyed the land to Hofues (which deed the Sinkeys denied signing).

A deed from Hofues and wife to C. O. Bellinger, dated July 1928, and a correction deed between the same parties dated October 22, 1930. A deed from C. O. Bellinger and wife to Temple Lumber Company, dated March 30, 1929, and a correction deed between the same parties dated October '21, 1930.

A contract of exchange and settlement agreement between F. S. Hofues and S. R. Sinkey and wife, dated January 11, 1929, which contract recites that Hofues had agreed to purchase the land in suit and to pay therefor, "to build two eight-story apartment buildings * * * in the city of Fort Worth * * * to be delivered to Sinkey with a gross obligation of $55000.00, Hofues to accept therefor the land in suit with indebtedness of $35,000.00 and one hundred acres of land free of incumbrance." "It is mutually agreed between the contracting parties in lieu of the first party (Hofues) delivering to the party of the second part (S. R. Sinkey) any apartment houses as above described, the party of the second part (Sinkeys) will accept the deed for the 100 acres of land above described free and clear of encumbrance and agree to release any claim or claims whatsoever against the balance of said land and to release any claim they may have against the party of the first part (Hofues) or the Worth Building and Investment Company by virtue of their guarantee of the fulfillment of the original agreement. Party of the first part agrees to pay the taxes on the one hundred acres described above."

Said contract further provided for the cancellation of the original contract in consideration of Hofues agreeing to employ S. R. Sinkey for a period of two years at a salary of one hundred dollars per month payable in advance.

Evidence was tendered to the effect that Sinkey received and retained the deed to the one hundred acres of land and the sum of $2,400 as provided by the settlement contract.

S. R. Sinkey testified: "I made this contract, dated May 23, 1928, with Mr. Hofues for the exchange of properties as testified to; after that I had conveyed the title to Mr. Hofues and was trying to get him to convey the apartments to me. I made a settlement agreement with Mr. Hofues. Under that settlement agreement I was to get $2,400 for working for him. I did get that twenty-four hundred dollars.

* * * I executed this settlement agreement on January 11, 1929. I continued collecting that money under that settlement agreement up to November, 1930. I did collect the money and after I had collected the money I amended my petition and charged fraud in that transaction in the Dallas suit. In addition to the $2400.00 that we got, we got one hundred acres of land out there that we now live on, which was discharged from the liens that had been originally against it. That was a part of the agreement, that we were to get that one hundred acres back. In connection with the contract of May 23, 1928, I never paid a dime upon the indebtedness on the land. When I purchased this land from the Browne Land & Cattle Company I executed notes for the purchase price mostly. As to whether I put up cash on this land myself at the time the deed was made I will say there was two thousand dollars by two of us. At the time I executed this Hofues contract I had only paid five or six thousand on that indebtedness; the balance of it was due and outstanding and they were wanting their money. They had refused to renew and extend my indebtedness. They offered to extend if we would pay the six thousand dollars on this $18,000.00. I have had no further notice and no demand has been made upon me for payment since the contract of May 23, 1928. I went to Brownsville and was down there on May 30, 1930, in connection with the settlement of this indebtedness that Mr. Hofues was to take over from the Browne Land and Cattle Company. Mr. Hofues did assume the indebtedness that was evidenced by these notes that were due on this land to the Browne Land and Cattle Company, and he substituted his notes for the notes I had executed to the Browne Land and Cattle Company. There has never been any demand on me since that time about any of that indebtedness. It was the understanding and agreement between Mr. Hofues and myself that I was to convey the land to him and he would then substitute his notes to the Browne Land and Cattle Company and give them a lien on the land securing them."

Mrs. Sinkey testified: "We then went back to his (Hofues) office and then did make the trade and agreed to sign a contract and deed subject to his making the buildings the way we wanted them and to his ability to get the Browne Land and Cattle Company to take his note. While Mr. Hofues was in Little Rock he gave

Mr. Sinkey a check for $100.00, as we were embarrassed. When Mr. Hofues came to Little Rock about the first of December he gave us $100.00. When we signed the contract on January 11 he did give us another $100.00. That made a payment of $200.00. He sent us $100.00 per month until it was finally settled up about November, 1930."

The appellee offered evidence to the effect that the Sinkeys executed and acknowledged the deed from S. R. Sinkey and wife to Hofues conveying the land in suit. It was shown without dispute that appellee loaned to Hofues the necessary funds to pay the demand of Browne Land and Cattle Company, in order that the vendor's lien indebtedness might be renewed and Hofues accepted as the primary debtor instead of Sinkey, and that the land in suit was conveyed to appellee in settlement of such indebtedness of Hofues owing to the Lumber Company.

 The Sinkeys seek a recovery of the land or damages for its value. Under either theory their recovery is dependent upon the establishment of the conspiracy and fraud as alleged.

A consideration of the evidence quoted and all other evidence in the record convinces us that a conspiracy to defraud was not shown in which appellee participated, or of which it had any notice concerning the transactions involved in this suit. The contract to convey between Sinkey and Hofues and the settlement contract between said parties together with a showing that all the consideration moving from Hofues to Sinkey had been fully paid and retained by Sinkey, have the effect to place the superior title to the land in suit in the vendee of Hofues, without the deed from the Sinkeys to Hofues (which deed was denied by the Sinkeys). Therefore, the trial court did not commit error in directing a verdict against the Sinkeys upon either theory of recovery.

In 41 Tex.Jur. § 26, p. 485, it is said: "A bond for title or contract to convey after the purchase price has been paid by the vendee operates to convey title to the land enabling him to maintain an action of trespass to try title."

The appellants complain of the action of the trial court in sustaining special exceptions to the first amended original answer and cross-action of the Sinkeys and in sustaining a motion to strike their second amended original answer and cross-action. The appellants went to trial upon their third amended original answer and cross-action filed after the rulings were made by the trial court. In 33 Tex. Jur. § 157, p. 600, it is said: "Generally speaking the right to appeal from the ruling is lost by filing an amended pleading in lieu of one to which a general demurrer or special exception has been sustained."

The record here presented brings the appellants under the general rule stated.

The appellants complain of the action of the trial court in excluding certain evidence. The appellee objects to the consideration of the assignments attempting to raise the questions, because it is alleged such assignments are not presented in accordance with briefing rules. We have carefully considered the bills of exception and entertain the opinion that the trial court correctly excluded the proffered evidence. The evidence is clearly hearsay as to the appellee.

Other questions are discussed by the appellants in their brief, but we are of the opinion that the questions above determined settle the appeal against the appellants.

Accordingly, the judgment is affirmed.